# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:13CR00036-004 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **JAMES THOMAS OXENDINE,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; James Thomas Oxendine, Pro Se Defendant.*

The defendant, James Thomas Oxendine, proceeding pro se, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, based on claims of ineffective assistance of counsel. The government filed a Motion to Dismiss, and the time for Oxendine to respond has expired, making the matter ripe for disposition. After reviewing the record, I will grant the United States' Motion to Dismiss.

I.

Oxendine and twelve codefendants were named in a multi-count Indictment. Oxendine was charged with conspiring to distribute and possessing with the intent to distribute 280 grams or more of cocaine base, and five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) and 841(b)(1)(C) ("Count One"); and distributing and possessing with intent to distribute a mixture or

substance containing cocaine base, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) ("Count Six"). The government filed an Information pursuant to 21 U.S.C. § 851, giving Oxendine notice that he was subject to enhanced penalties based on three prior state felony drug convictions. (Notice of Enhanced Punishment, ECF No. 86.)

Oxendine pleaded guilty, pursuant to a written Plea Agreement, to a lesser-included offense of Count One – conspiring to possess with intent to distribute cocaine base and cocaine – and to Count Six. (Plea Agreement 1, ECF No. 290.) The Plea Agreement provided that the conspiracy involved at least 840 grams of cocaine base, resulting in a base offense level of 34 under the Sentencing Guidelines. (*Id*. at 4.) Under the terms of the Plea Agreement, the government agreed to request dismissal of the § 851 Information. (*Id*. at 3.) Oxendine and the government both agreed not to seek a sentence outside of the guideline range. (*Id*. at 4.)

At the guilty plea hearing, Oxendine affirmed that he did not have any health problems and counsel stated that she had no doubt as to Oxendine's competency to enter a plea. (Plea Hr'g Tr. 3, ECF No. 517.) Oxendine stated that he had had an adequate opportunity to read and discuss the Plea Agreement with counsel before signing it. (*Id*. at 4.) Oxendine further affirmed that he was "fully satisfied with [his] attorney's representation." (*Id*.) The prosecutor summarized the terms of the

Plea Agreement. (*Id*. at 4-7.) Both the prosecutor and the court advised Oxendine that he faced a maximum statutory penalty of not more than twenty years' imprisonment each on both Counts One and Six. (*Id.* at 5, 9.)

Oxendine affirmed his understanding that by pleading guilty, he gave up his right to appeal and to collaterally attack his sentence except on matters that cannot be waived under the law or that allege ineffective assistance of counsel. (*Id.* at 8.) Oxendine affirmed that no one had made any promises to him other than those contained in the Plea Agreement to cause him to plead guilty and that no one had threatened him or attempted to force him to plead guilty. (*Id*.) The prosecutor stated that the government had evidence that Oxendine entered into an agreement with codefendants to distribute cocaine and cocaine base in Bristol, Virginia, and that a confidential informant bought cocaine base from a middleman who purchased the drugs from Oxendine. (*Id*. at 14.) Oxendine did not dispute the facts against him, and pleaded guilty. (*Id*.) I found that Oxendine was fully competent and capable of entering an informed plea and that his guilty plea was knowingly and voluntarily made. (*Id.* at 14-15.)

The Presentence Investigation Report ("PSR") recommended a total offense level of 29[1] and a criminal history category of VI because Oxendine qualified as a career offender under U.S.S.G. § 4B1.1(b), resulting in a guideline imprisonment

---

[1] The Plea Agreement and PSR listed Oxendine's base offense level as 32, but the PSR recommended a three-point reduction for acceptance of responsibility.

range of 151 to 188 months. (PSR ¶ 82, ECF No. 426.) Oxendine's counsel filed a Sentencing Memorandum requesting that Oxendine be sentenced to 151 months' incarceration, a sentence that she argued was "sufficient, but not greater than necessary . . ." to fulfill the purposes of the sentencing statute. 18 U.S.C. § 3553(a). I agreed, adopted the PSR and sentenced Oxendine to 151 months each for Counts One and Six, to run concurrently. (Judgment 2, ECF No. 423.) He did not appeal.

In his § 2255 motion, Oxendine alleges that counsel provided ineffective assistance by: (1) denying his right to a preliminary hearing; (2) waiving his right to a speedy trial without his consent; (3) advising him to plead guilty to Count Six; (4) writing his acceptance of responsibility statement without his consent; and (5) failing to challenge the drug weight in the Plea Agreement. (Mot. to Vacate 4, 5, 7, 8, ECF No. 510.) Oxendine also filed a Motion to Supplement his § 2255, arguing, in support of his third alleged claim of error, that the government did not have enough evidence to support Count Six.[2]

---

[2] Because this Motion to Supplement relates back to the original § 2255 pleading, in that it deals with the government's proof to support Count Six, it will be considered. Fed. R. Civ. P. 15(c) (providing that an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading").

II.

To state a viable claim for relief under § 2255, a defendant must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Oxendine bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965).

The proper vehicle for a defendant to raise ineffective assistance of counsel claims is by filing a § 2255 motion. *United States v. Baptiste,* 596 F.3d 214, 216 n.1 (4th Cir. 2010). However, ineffective assistance claims are not lightly granted; "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686 (1984). Accordingly, in order to establish a viable claim of ineffective assistance of counsel, a defendant must satisfy a two-prong analysis showing both that counsel's performance fell below an objective standard of reasonableness and establishing prejudice due to counsel's alleged deficient performance. *Id.* at 687.

When considering the reasonableness prong of *Strickland*, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *Gray v. Branker,* 529 F.3d 220, 228-29 (4th Cir. 2008). Counsel's performance is judged "on the facts of the particular case," and assessed "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689-90.

To satisfy the prejudice prong of *Stickland*, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Id.* at 694. A defendant who has pleaded guilty must demonstrate that, but for counsel's alleged error, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Oxendine's claims of ineffective assistance of counsel do not satisfy *Strickland's* stringent requirements. Accordingly, these claims will be dismissed.

*A. Preliminary Hearing.*

Oxendine first argues counsel erred by denying him the right to a preliminary hearing. Rule 5.1 of the Federal Rules of Criminal Procedure require a magistrate judge to conduct a preliminary hearing for offenses other than petty

- 6 -

Case 1:13-cr-00036-JPJ   Document 548   Filed 08/17/16   Page 6 of 13   Pageid#: 3248

offenses, unless the defendant is indicted, for the purpose of determining whether there is sufficient evidence to hold the defendant for trial. The preliminary hearing must take place within twenty-one days, if the defendant is not in custody. Fed. R. Crim. P. 5.1. Once a defendant has been indicted, however, the grand jury has satisfied the requirement of probable cause obviating the need for a preliminary hearing. *See United States v. Soriano-Jarquin*, 492 F.3d 495, 502 (4th Cir. 2007) (noting that "it has been a long-standing rule that the return of an indictment by the grand jury eliminates the requirement of holding a preliminary hearing") (internal quotation marks omitted).

Oxendine was charged by criminal complaint on August 27, 2013. Twenty-one days later, on September 17, 2013, he was indicted. Accordingly, there was no need for a preliminary hearing. As such, Oxendine cannot establish that counsel erred by failing to so argue. *Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) (concluding that counsel does not provide deficient representation by failing to raise issues that are futile); *see also United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (noting that "[a]n attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue"). Because Oxendine was not entitled to a preliminary hearing, he

cannot establish ineffective assistance or prejudice by counsel's failure to ensure that he receive a preliminary hearing. *Strickland*, 466 U.S. at 687.

### B. Speedy Trial Act.

Next, Oxendine argues that counsel provided ineffective assistance by waiving his right to a speedy trial without his consent. Under the Speedy Trial Act, a defendant facing felony charges must be brought to trial within seventy days of his indictment. 18 U.S.C. § 3161(c)(1). However, the statute provides for an exception for any delay that results from a continuance granted "at the request of the defendant *or his counsel*" based on the court's findings that the ends of justice served by the continuance outweigh the best interest of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)(A) (emphasis added); *see also United States v. Hopkins*, 310 F.3d 145, 149 (4th Cir. 2002) (noting that the speedy trial time frame may be tolled for a variety of reasons, including "when defense counsel requests more time to prepare").

Oxendine's counsel requested a continuance and a "trial date outside the speedy trial time" in order "to adequately investigate the charges and to prepare for trial." (Mot. to Cont. 1, ECF No. 156.) Counsel alone, by the wording of the statute itself, may request a continuance. 18 U.S.C. § 3161(h)(7)(A). Moreover, "[s]cheduling matters are plainly among those for which agreement by counsel generally controls." *New York v. Hill*, 528 U.S. 110, 115 (2000). In addition,

Oxendine cannot establish prejudice, because rather than impairing his defense, the continuance directly benefited his counsel's ability to prepare a defense and engage in plea negotiations. Accordingly, Oxendine cannot establish that counsel's decision to request a continuance without Oxendine's consent constituted ineffective assistance or prejudiced him in any way. *Strickland*, 466 U.S. at 687.

*C. Coerced into Pleading Guilty.*

Next, Oxendine argues that counsel was ineffective for advising him to plead guilty to Count Six because counsel did not investigate the evidence that the government had to support the Count, counsel did not adequately explain the Count to Oxendine, and counsel coerced him into pleading guilty to this charge. These claims are directly contradicted by Oxendine's affirmations under oath during the Rule 11 colloquy. He stated that he had been afforded adequate time to review the Indictment, that he understood the charges against him, that he wanted to plead guilty because he was, in fact guilty, and that no one had threatened or attempted to force him to plead guilty. (Plea Hr'g Tr. 4, 8, 14, ECF No. 517) Moreover, although Oxendine claims that there is no evidence to support Count Six, he affirmed, in court, that the government's evidence would show that he had sold crack cocaine, in particular to an individual who had then sold the drugs to a confidential informant. (*Id*. at 14.) These facts support Count Six.

Oxendine offers no basis for his claim in his § 2255 motion that the statements he made at his plea colloquy were untrue. *See United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (holding that absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false"). Oxendine suggests that he was in "distress" and was "trying to request medical examinations" because he did not want to plead guilty. However, at his plea colloquy, he stated that he had no health problems that would make it difficult for him to understand the proceedings. (Plea Hr'g Tr. 3, ECF No. 517.) Therefore, Oxendine is bound by his plea colloquy statements and cannot establish that counsel's suggestion that he plead guilty to Count Six constituted representation that fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.

*D. Writing Petitioner's Acceptance of Responsibility Statement.*

Oxendine also argues that "[c]ounsel was ineffective to write his acceptance of responsibility letter on his behalf without his consent." (Mot. to Vacate 8, ECF No. 510.) Defendants who plead guilty may be entitled to a three-point reduction to their base offense level for accepting responsibility for their participation in the crime, pursuant to U.S.S.G. § 3E1.1(a) and (b). Oxendine received this three-level reduction, which lowered his advisory guideline range of 210 to 262 months, to

151 to 188 months' imprisonment. Even assuming that counsel wrote a letter accepting responsibility on Oxendine's behalf without his consent, Oxendine cannot establish prejudice. He cannot show that absent counsel's acceptance of responsibility letter, the result of the proceeding would have been "more favorable to the defendant." *Strickland*, 466 U.S. at 695. In fact, the opposite is true, as Oxendine might not have received the three-point reduction to his base offense level. Accordingly, this claim is without merit.

E. *Drug Weight.*

Finally, Oxendine argues that counsel was ineffective for failing to object to the drug weights attributed to him in the Plea Agreement and PSR. Specifically, he claims that he should be held responsible for 532.75 grams, rather than the 840 grams attributed to him in the Plea Agreement, or the 1,372.75 grams attributed to him in the PSR. This argument lacks merit for many reasons.

First, in his Plea Agreement, Oxendine stipulated to the fact that he was responsible for at least 840 grams of cocaine base. He signed the Plea Agreement, and he affirmed, under oath at his plea colloquy, that he had reviewed the Plea Agreement with counsel and it was accurate. (Plea Hr'g Tr. 4, ECF No. 517.) Oxendine's statements in his § 2255 motion that contradict his sworn statements at his plea colloquy are unavailing. *Lemaster*, 403 F.3d at 221.

Second, Oxendine ignores the nature of a conspiracy when he argues that counsel provided ineffective assistance by recommending that he plead guilty to a "drug weight that he believes is higher than that which he is actually responsible for." (Mot. to Vacate 3, ECF No. 501-2.) A defendant convicted of conspiracy may be held accountable for all drugs attributable to all members of the conspiracy, if reasonably foreseeable to the defendant. *See United States v. Randall*, 171 F.3d 195, 210 (4th Cir. 1999) (noting that "the district court may attribute to the defendant the total amount of drugs involved in the conspiracy, provided the drug quantities were reasonably foreseeable to the defendant and are within the scope of the conspiratorial agreement"); *United States v. Sesere*, 413 F. App'x 653, 659 (4th Cir. 2011) (unpublished). Accordingly, as long as the drug quantities were foreseeable to Oxendine, he can be held accountable not only for the drugs that he sold, but also for those drugs sold by other members of the conspiracy. As a result, his focus on the amount of drugs that he alone sold is misplaced. Therefore, Oxendine has not established that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687.

III.

For the foregoing reasons, I will grant the United States' Motion to Dismiss and dismiss the Motion to Vacate, Set Aside, or Correct Sentence. A separate Final Order will be entered herewith.

        DATED: August 17, 2016

        /s/ James P. Jones
        United States District Judge